IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ROSIE FAIRLEY**                                                                                          **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 2:13-CV-98-KS-MTP**

**GREAT AMERICAN INSURANCE COMPANY**                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** Defendant's Motion for Summary Judgment [34] and **denies** Defendant's Motions to Strike [43, 45] as moot. The Court will enter a separate judgment in accordance with this opinion.

### I. BACKGROUND

Plaintiff is the widow of a truck driver, Delbert Fairley. Mr. Fairley died on December 10, 2009, while inside his truck parked at the Kangaroo Truck Stop on U.S. Highway 49, north of Hattiesburg, Mississippi. The cause of death was a pulmonary embolism. A deep vein thrombosis detached, went to his heart, lodged in the right ventricle, and prevented the heart from pumping blood through the pulmonary arteries, causing hypoxia and death.

At the time of his death, Mr. Fairley was insured under an Occupational Accident Insurance Policy [34-4] issued by Defendant Great American Insurance Company. Pursuant to certain terms and conditions, the policy provides accidental death benefits, including a monthly survivor's benefit to a surviving spouse. Plaintiff filed a claim for the survivor's benefit. Defendant denied the claim [34-7], asserting, among other things, that coverage was barred by the policy's exclusion of losses caused

by sickness or disease.

Plaintiff filed this suit in state court, asserting claims for breach of contract, bad faith, and punitive damages. Defendant removed the case and eventually filed a Motion for Summary Judgment [34], which is ripe for review.

## II. DISCUSSION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Defendant argues that Plaintiff's claim is barred by the following policy exclusion: "This policy does not cover any . . . loss caused in whole or in part by, or

resulting in whole or in part from, any of the following: . . . sickness, disease or infection of any kind . . . ." Defendant contends that Mr. Fairley's death was caused by a "sickness" or "disease" and is excluded from coverage.

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.*

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 419 (5th Cir. 2008); *see also Corban*, 20 So. 3d at 609; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

Rather than a question of contract interpretation, here the Court is faced with

a fact question of what caused Mr. Fairley's death. Plaintiff's own expert, Dr. Steven W. Stogner, stated [41-2] that the cause of death was a "saddle embolus" – a "clot positioned in the main pulmonary artery at the take off of the left and right pulmonary arteries." According to Stogner, the clot started as a "deep venous thrombosis" in Mr. Fairley's leg and traveled up to the heart, where it lodged in the right ventricle, causing "an acute decrease or even cessation of its ability to pump blood through the pulmonary arteries." Stogner described [41-3] Fairley's condition as "venous thromboembolic disease (VTED)." He said, "The condition of having an acute pulmonary embolus itself is referred to as *VTED*. . . . . The only 'VTED' he had was the *acute event he suffered on the date of his death*," acknowledging that a pulmonary embolism is a type of disease.

Likewise, one of Defendant's experts, Dr. Mark T. Dransfield, stated [34-3] that Mr. Fairley died from "a large saddle pulmonary thromboembolus, or thromboembulism, which occupied and plugged his main and secondary right and left pulmonary arteries." Dransfield noted that Fairley's "autopsy . . . revealed signs of prior pulmonary emboli with organizing clots in his left lung as well as right ventricular thickening and dilation, conditions which likely developed and continued as a result of multiple factors including thromboembolic disease . . . ." Dransfield stated "that [Fairley's] thromboembolic disease was a progressive condition."

Finally, Dr. Adele M. Lewis, the doctor hired by the State of Mississippi to conduct Mr. Fairley's autopsy, found [34-2] that Mr. Fairley's cause of death was "pulmonary thromboemboli, with super-super obesity considered an important

4

contributory cause of death." She found a "large . . . saddle pulmonary thromboembolism . . ." and noted "older-appearing blood clots in the arterioles of the left lung." It is undisputed, therefore, that Mr. Fairley's cause of death was a pulmonary embolism or – as described by Plaintiff's expert – venous thromboembolic disease.

The policy excludes "any . . . loss caused in whole or in part by, or resulting in whole or in part from . . . sickness, disease or infection of any kind . . . ," but it does not provide a definition for the terms "disease" or "sickness." Under Mississippi law, "words, terms, phrases, and clauses in insurance contracts are to be given their everyday meanings, not hypertechnical or esoteric definitions, but their plain and common meaning." *McFarland v. Utica Fire Ins. Co.*, 814 F. Supp. 518, 525 (S.D. Miss. 1992), *aff'd*, 14 F.3d 55 (5th Cir. 1994).

It is beyond dispute that the condition which caused Mr. Fairley's death – a pulmonary embolism – falls within the common, everyday meaning of the word "sickness." Furthermore, Plaintiff's own expert described Mr. Fairley's condition as a "disease," and it falls within multiple dictionaries' definitions of "disease" and "sickness."[1] The Court concludes, therefore, that Plaintiff's claim for survivor benefits

---

[1] The Oxford English Dictionary defines a "disease" as a "condition of the body, or of some part or organ of the body, in which its functions are disturbed or deranged," an "individual case or instance of such a condition;" or "an illness, ailment, malady, [or] disorder." "disease, *n.*," The Oxford English Dictionary, 2nd ed. (Oxford University Press, 1989). It defines a "sickness" as the "state of being sick or ill; the condition of suffering from some malady; illness, ill-health." "sickness, *n.*," The Oxford English Dictionary, 2nd ed. (Oxford University Press, 1989).

is barred by the policy's "sickness and disease" exclusion. *Cf. Cumbest v. Gerber Life Ins. Co.*, No. 1:07-CV-968-WJG-JMR, 2009 U.S. Dist. LEXIS 85152, at *29-*30 (S.D. Miss. Sept. 16, 2009) (where policies provide that an accident must be "directly and independently" the cause of a loss, the general rule is that if disease is a concurrent proximate cause, the insurance company is not liable) (citing *Sekel v. Aetna Life Ins. Co.*, 704 F.2d 1335, 1338 (5th Cir. 1983)).[2]

Plaintiff argues that there exists a genuine dispute of material fact as to whether Mr. Fairley's pulmonary thromboembolic disease existed prior to the pulmonary embolism which caused his death. Plaintiff apparently contends that Mr. Fairley's condition is not a "disease" or "sickness" if it did not manifest itself prior to

---

Webster's New College Dictionary defines a "disease" as "an abnormal condition of an organism or part that impairs normal physiological functioning, esp. as a result of infection, inherent weakness, or environmental stress." "disease, *n.*," Webster's II New College Dictionary (Houghton Mifflin 1995). It defines a "sickness" as an "illness" or a "defective or unsound condition." "sickness, *n.*," Webster's II New College Dictionary (Houghton Mifflin 1995).

Finally, Merriam-Webster.com defines a "disease" as "an illness that affects a person, animal, or plant; a condition tha prevents the body or mind from working normally." "disease, *n.*," Merriam-Webster.com (July 8, 2014), http://www.merriam-webster.com/dictionary/disease. It defines a "sickness" as an "unhealthy condition of body or mind; the state of being sick." "sickness, *n.*," Merriam-Webster.com (July 8, 2014), http://www.merriam-webster.com/dictionary/sickness.

[2]Many Mississippi cases applying sickness or disease exclusions in accident policies are inapplicable here, insofar as they address situations where a disease or sickness was accompanied by another contributing cause of death or injury. *See, e.g. Britt v. Travelers Ins. Co.*, 556 F.2d 336, 341-42 (5th Cir. 1977); *Brown v. PFL Life Ins. Co.*, 312 F. Supp. 2d 863, 868 (N.D. Miss. 2004); *Lincoln Am. Life Ins. Co. v. Ruscoe*, 210 So. 2d 769, 772 (Miss. 1968); *Zurich Ins. Co. v. Ruscoe*, 203 So. 2d 305, 308-09 (Miss. 1967); *Peerless Ins. Co. v. Myers*, 192 So. 2d 437, 439 (Miss. 1966). Here, there is no question of primary and secondary causes. The cause of death was a pulmonary embolism, with no other contributing cause.

death. Phrased differently, Plaintiff argues that the cause of death must have been a chronic condition, rather than an acute event. The policy contains no requirement, however, that the "disease" or "sickness" preexist the loss which precipitates a claim. Indeed, Plaintiff's own expert described the embolism as an "acute event," yet acknowledged that the cause of death was venous thromboembolic disease. Moreover, the plain, everyday usage of the term "sickness" surely encompasses both chronic medical conditions and acute medical events.

Plaintiff also argues that Defendant had insufficient information to support a denial based on this exclusion at the time it was first asserted in June 2010. But the autopsy was performed in December 2009, and the denial letter [1-1] of June 1, 2010, plainly states that the "cause of death was determined to be Pulmonary Thromboemboli."

### III. CONCLUSION

For the reasons stated above, the Court **grants** Defendant's Motion for Summary Judgment [34]. The Court will enter a separate judgment in accordance with Rule 58.

The Court also **denies** Defendant's Motions to Strike [43, 45] as moot.

SO ORDERED AND ADJUDGED this 14th day of July, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE